CLARK, Justice,
dissenting.
| ,This case presents another in a long line of cases where we are asked by a capital defendant to substitute our review of the voir dire testimony in the place of the trial judge who actively participated in the questioning of prospective jurors, was present to hear their vocal inflections and to see their facial expressions, and came to the conclusion the prospective juror could be fair and impartial. We are required by the law to give deference to the conclusions of the trial judge as to the Witt — and Witherspoon — readiness of prospective jurors. I dissent because I believe the majority fails to defer to the trial judge’s conclusion with regard to prospective juror Roy Johnson where the trial judge was in a superior position to discern his impartiality vel non. After reading and considering the voir dire with regard to this prospective juror, I agree with the observations of the trial judge that Mr. Johnson was impartial and with the court’s ruling denying the cause challenge raised by the defense.
I disagree with the majority’s characterization of defense counsel’s questioning as proper. See Slip Op., p. 22, n. 10. This disagreement underscores the different conclusions to be reached by reading a cold record devoid of intonation, manner, and demeanor — in short, all the nuances of which the district court is aware. The type of questioning engaged in by defense counsel with Mr. |¾Johnson has been seen often in capital voir dire in other cases. Specifically, I find defense counsel repeatedly sought a commitment as to how Mr. Johnson would vote after hearing hypothetical situations with certain mitigating circumstances. Without knowledge of specific facts, or a context for actual mitigating circumstances, Mr. Johnson responded with answers describing how he would weigh those mitigating factors. In addition, defense counsel also sought to elicit from Mr. Johnson, without any context whatsoever, Mr. Johnson’s own descriptions of what type of mitigating circumstances might move him to vote for a sentence of death or a life sentence. This court has repeatedly condemned this practice of putting lay persons “on the spot” and then microscopically dissecting their responses for legal error.
During questioning to determine whether a prospective juror can consider certain mitigating factors before determining the appropriate sentence, the particular phrasing of the question by the state and the defense may determine whether a sentence and/or conviction is upheld or is reversed. Such parsing of the responses on review of what is inherently a dynamic process of questioning and answering demeans the process of determining, simply, whether a prospective juror is impartial, and tends to reduce the goals of voir dire to mere gamesmanship.
In State v. Ball, 2000-2277, p. 11-24 (La.1/25/02); 824 So.2d 1089, 1101-1111, we set forth an extended discussion of the voir dire testimony of three prospective jurors. The trial court denied cause challenges for each of these three prospective jurors, in part on the basis of the manner of defense counsel’s questioning with regard to their consideration of mitigating circumstances. One of these prospective jurors’ responses even included an agreement that she would “automatically” impose the death penalty. However, even *197 this extreme was balanced against the remainder of her responses, which the majority fails to do here.
IsDuring the prosecutor’s questioning, Mr. Johnson indicated he would listen to all the evidence, and that even if the defendant was found guilty in one stage [the guilt phase], the penalty would still depend, since the evidence might show “it’s certain things cause him to do it.” Mr. Johnson indicated he was open to both the death penalty and life imprisonment. When asked whether “life is realistic [as a possible penalty],” he responded “right.” He said he had “no problem with the death penalty one way or the other.” He rated himself a “3,” exactly in the middle on the 1-5 scale as to life imprisonment at one end and death penalty at the other. He stated both punishments were open for consideration, that there was nothing swaying him one way or the other, and that he would wait until he heard the evidence.
However, there were several times during questioning by defense counsel when Mr. Johnson was asked to commit or prejudge either specific facts or mitigating factors. Mr. Johnson was also asked to supply circumstances that would cause him not to vote for the death penalty. Throughout all of this, Mr. Johnson stated he would be listening to defense counsel and to anything brought before him for consideration. He denied that defense counsel would have an uphill battle for his consideration of mitigating factors. Instead of trying to determine whether Mr. Johnson could consider each of the factors (and not whether he would consider each factor, or what weight he would give them), defense counsel asked repeatedly for a commitment as to whether something would or would not be a mitigating circumstance for him.
In the midst of what I consider to be improper questioning by defense counsel, Mr. Johnson agreed or testified to the following: he would not automatically vote for death; he would listen to any mitigating evidence presented; the defense did not have an uphill battle; he was not going to vote to kill a man “just because;” each juror had to make their own individual judgment about what |4was right, including mitigating circumstances; he understood the verdict had to be unanimous; he would not “stick to his guns,” which in context meant he would not prejudge the matter and refuse to be moved no matter what was presented;[1] he could still vote for life imprisonment even if there were multiple aggravating circumstances and no mitigating factors; he was “going to do the right thing in his mind, period;” and he would respect other jurors’ opinions.
I am not suggesting Mr. Johnson’s voir dire testimony does not contain some answers that could be considered problematic, or that he did not show a predisposition to vote for the death penalty if the perpetrator of the offense was voluntarily intoxicated with alcohol or drugs. However, we have held “[n]ot every predisposition or leaning in any direction rises to the level of substantial impairment.” State v. Lucky, 96-1687, p. 7 (La.4/13/99); 755 So.2d 845, 850. In light of the type of questioning in which defense counsel engaged him, I think Mr. Johnson’s testimony is the type *198 of “mixed bag” routinely seen by this court. It is not hard to see why the trial judge found Mr. Johnson to be impartial.
I believe the majority has strayed from our reasoning in Lucky where we analyzed the proper standard in determining whether substantial impairment is shown by these instances of a prospective juror’s predisposition:
Significantly, it is in the determination of substantial impairment that the trial judge’s broad discretion plays the critical role, [citation omitted] When the trial judge throughout the voir dire demonstrates an awareness of the proper legal standard, and when there is nothing in the record of the voir dire that, taken as a whole, shows a substantial impairment of the prospective juror, a reviewing court | r,should defer to the trial judge’s determination with respect to challenges for cause. While the reviewing court must carefully review the record of voir dire for abuses of discretion, it need not and should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify either qualification or disqualification.
Id., 96-1687, p. 7; 755 So.2d at 850-851'.
In fact, defense counsel’s manner of questioning Mr. Johnson was raised by the prosecutor at the bench conference on this prospective juror (“But Mr. Johnson was clear despite the line of questioning that seemed to disregard every previous answer.”). With regard to Mr. Johnson’s alleged inability to consider alcohol or drug consumption as a mitigating factor, the prosecutor argued:
Mr. Johnson will clearly listen to all the mitigators, and what he was reaching was a conclusion about the voluntary consumption of alcohol, but if they are able to show them a drug condition that, you know, does meet whatever his criterion are, then he will consider it, but he was coming down on a specific fact pattern that, you know, I tend to agree with Mr. Johnson. You know, if I smoke a joint and go kill somebody, you probably, you know, would say that wouldn’t really weigh very heavily with me. I think that’s all Mr. Johnson is saying. And what Mr. Edwards is pointing out is that his specific words about drug and alcohol were that it was not an excuse, and he never specifically said it was not a mitigating factor he would not consider.
After hearing defense counsel’s argument, the trial judge denied the defense’s requested cause challenge in a strongly-worded ruling:
Well, I’m ready to rule on Mr. Johnson. He is, I think, an extremely well qualified prospective juror. It is clear to me without any doubt he is very impartial and neutral.
You know, one thing that’s inappropriate is to take one isolated out-of-context statement of one prospective juror and micro-dissect it to the point of reaching an absurd result.
The Supreme Court, and particularly Justice Harry Lemmon when he was there, cautioned us about that.
And looking at Mr. Johnson and watching how he says, what he says and his manner and demeanor and looking at the totality of his testimony this afternoon I am convinced he would be extremely capable of being fair and impartial and neutral and would give Mr. Mickelson a fair trial.
I think we would be lucky to have Mr. Johnson on the jury is my view of him. So there is no basis in my view for a cause challenge on Mr. Johnson, none. Cause challenge denied.
*199 | ^Considering the manner of defense questioning with the totality of Mr. Johnson’s responses, and the trial judge’s strongly-worded endorsement of Mr. Johnson as an impartial juror based in part on factors only he could witness, I do not think the record supports a finding of an abuse of the trial court’s discretion in denying the defense cause challenge at issue.
In light of the majority’s holding, I offer the following suggestion to trial court judges, even those who are “learned, diligent, and ever-vigilant in attempting to ensure that a fair and impartial jury [is] empaneled,” slip op., p. 26, who wish to ensure that their rulings on cause challenges with regard to consideration of mitigating factors are not reversed on appeal. Considering the majority’s talismanic emphasis on the “last” expression of the prospective juror, a trial judge, and not counsel, should ask each and every prospective juror a final question. After reading out a list of the mitigating factors, or discussing them, the trial judge should ask:
Without telling me what weight you would give to any of these mitigating factors, or in what way they would influence your decision, can you consider them before making the determination whether life imprisonment or the death penalty is the appropriate punishment should the defendant be found guilty of a capital murder?
For these reasons, I dissent.

. This exchange is pretty representative of the questioning:
Defense counsel: Is what you are telling me you are the kind of guy who is going to stick to his guns?
Mr. Johnson: No, no, no, no, no, I’m not the kind of guy that’s going to stick to his guns. After you bring something up to the table that show me that, hey, we got some new evidence, let's look at this here, I’m not— I'm not — I'm not hard ball, no.